May it please the Court and Counsel, if there were ever a case that should be decided by the State Courts, because we are dealing with insurance issues, particularly insurance issues involving premiums, premium discrimination issues, and discrete insurance issues, that should be decided by the State Courts. And you asked for that at the District Court level? Yes, sir. We asked for that via our Rule 1367C motion to decline supplemental jurisdiction and or to remand the case. Did you ask for certification early in the process or only after you lost at the District Court? We asked before the case was submitted. We asked for certification after we asked for 1367C motion to decline supplemental jurisdiction and to remand the case. Did you ask for certification before the result was submitted? Yes, we did. Yes, we did. And if you will look at the opinion of the District Court... When was that, in the process of proceeding from the start to the end? When did you first formally, on the record, ask for certification? It was before, it was after the briefing, but before the oral argument. And I don't think that all the briefing had been completed at that time. So what occurred was... Was that a motion? I mean, is there something in the record? There's a formal motion and briefing in the record. And so what the District Court did was he handled the Rule 1367C motion to decline supplemental jurisdiction and to remand and the motion to certify in one fell swoop. And that's reflected in his order. And he dealt with that basically in about three paragraphs. And as I recall, it's about page five or six, three or four of the order and opinion. What is our standard of review on that issue of certification? I think the standard of review is abuse of discretion with respect to all three of these issues. Do you really? Don't we have sua sponte authority, even if you'd never asked for it? Well, I think that was... Ask the Montana Supreme Court. I think that was... Oh, I think you do. But here's the animating point here. From about continental casualty v. Robsack through about the Dazzle case and, in addition, the Acri case, there was some question with respect to situations where there are no federal issues and the only issues are state law issues in a case. Recall, in this case, this case started as a state declaratory judgment action that was removed to federal court under federal question jurisdiction. Federal question jurisdiction was, the big issue was ERISA preemption. That issue went to the U.S. Supreme Court. The U.S. Supreme Court, well, this court first basically said the Little HIPAA Act claim in plaintiff's complaint was conflict preempted. But in FOSN 1, this court said that the claim involving the unfair discrimination statute, the state law unfair discrimination statute, is analytically distinct, has nothing to do with any ERISA claim in this case. Remember, this is a benefits, this is not a benefits case. ERISA deals with benefits. This is a premiums case. And as ERISA has said and as McCann Ferguson has said, when we are dealing with premiums and rates, those are matters distinctly and specifically subject to state law. And this court, the federal system, really has no business dealing with those issues. May I get to the merits? Yes. All right. So you have the statute amended in 1987, correct? Yes. And in there it says you have an independent cause of action as an insured or third party under these six specific subsections, correct? Yes. So if you read that as an affirmative amendment of the statute and then you combine it below and the only other thing that's preserved in that section is any other cause of action, which is generally meant to be a preexisting common law right, why then in your view does all of a sudden this nondiscrimination coming out of section sub 206 permit a private right of action when the legislature has been so explicit on that topic? Well, in fact, the legislature has explicitly said both in the title of the statute, in the sponsor's statements on the statute, and with respect to the statute itself under 3318.242 sub 3, which has been analyzed by the Montana Supreme Court in a number of cases in which this very issue has been raised, which is all these cases are cited and discussed in our brief, that these amendments only dealt with claims handling issues. This is not a claims handling issue. This is a premium discrimination issue. But that's, you know, first of all, to look to the statute, we wouldn't look to the legislator's statements or to the title generally. We would look to the text of the statute. And we'd look to the Montana Supreme Court's interpretation of that text. Right. And so, in fact, those are the issues, those claims issues, if you want to call them claims settlement issues, those are the ones that they've given you a private right of action. It seemed all the cases, and this is where I may be misunderstanding your brief, so I want you to help me out, is it seems a lot of the cases you cite, they simply emphasize that your common law breach of contract claims are separate claims. So I'm not sure how that gets into your answer. Let's talk about any of the basic cases in my brief. For example, the Thomas v. Northwestern National Insurance Company case. That was a case in which the insurer is required by Montana law to give notice to insurers when they change the terms of the insurance policy. In this case, they failed to do that. And the plaintiff brought suit under that for a violation of that statute. The Supreme Court was faced with this very same argument that Blue Cross is making here, that 3318242 sub 3 precludes this claim. The Supreme Court analyzed that very specifically and said, no, that is not the case. That case only applies to claims handling. The court was faced with that issue again in O'Fallon, and O'Fallon extraordinarily analyzed that issue, same result. The court also analyzed that in the Williams case. And, again, the same result. So the fundamental question, it seems to me, when you have a discrete state insurance law involving very specific state public policies regarding rates and rate discrimination and what can be charged to small employers, who is in the better shape and who, as a matter of Article III federalism principles, should resolve those issues? Should it be a Federal court, a court of limited jurisdiction, or should it be the State Supreme Court? I think we've got your argument well in hand on your position on that. So let me go back and then let's take the last case you mentioned. You know, I read Williams, and there's a lot of language in there about how they shaped their claim, but it seems to me that, although there was some question of whether there was a post-claim claim, which might not be covered under these six subsections, they were basically saying, well, we bring this out because it bears on our breach of contract claim. And I don't think anybody has suggested that the common law breach of contract claim is somehow preempted or precluded. So what is it, for example, that I should look to in Williams to basically say that you would be permitted a claim on the section you're arguing about? We are arguing that the insurer breached the contract and breached specific provisions of the Small Employer Health Insurance Availability Act, and as a result violated this specific statute. Let me ask if you're basically saying because the contract says they're going to follow the law, that because they didn't, in your view, because they violated this, that it swept into the contract. It swept into the contract. But if we don't interpret it that way and you would need some kind of stand-alone authority to bring this case under that nondiscrimination section, what would be the authority then? It's in Montana, under Montana law, under 27-1-104 and 105, if there's a duty and there's a breach and there's injuries caused by the duty and breach, you're entitled to bring suit for damages. Does that mean then you are abandoning your claim under the Unfair Trade Practices Act? No, I'm not. I'm saying that 33-18-2062 articulates what the duty is. But if you want to come under the act, you have to identify the provision which allows a private right of action, and we've been through this. There are quite a number of options, but this one is not there. I disagree based on O'Fallon, based on all of the post-1987 cases that have interpreted 33-18-242 sub 3. All of those cases have said that amendment only applies to claims handling. Clearly, this case is not a claims handling case. It's a case involving the breach of contract for provisions that are incorporated into the contract, and they're incorporated in the contract via basic Montana law that goes back to 1928. So your position is this is purely a common law claim that you're bringing? You're not relying on any statutory standards? Of course we're relying on statutory standards. Statutory standards animate what the duty is. But the contract here did not say that the parties agree to be bound by 33-18-206. Well, under the Sanguine case, under the Lee case that is referenced in Sanguine, it goes back to 1928. The insurance code, particular insurance code, is incorporated into insurance contracts. Otherwise, the insurance code would be meaningless. And as we well know in Montana, the insurance commissioner does not have plenary power with respect to the insurance code. That's been articulated in the Williams case most recently, in the McCarter case, and before McCarter in Sullivan v. Goh. Why would they need to give a, if your argument is right, what do you need to have a statute that says private right of action for because, in your view, it's all swept into any insurance contract? Well, you know, the legislature specifically was dealing in 1987 with the Clout decision, and they were trying to limit the import of the Clout decision. And frankly, they did not accomplish that based on the Supreme Court's decisions in Thompson, O'Fallon, Williamson, and Brewington. And the fundamental question, it seems to me, Your Honors, is, I'm using all my time. You've used all your time. Why don't you wait, and we'll hear from you on a, I'll give you a short time for rebuttal. Thank you. May it please the Court, Counsel, my name is Mike McMahon. I represent Caring for Montanans, Incorporated, formerly known as Blue Cross and Blue Shield of Montana East. The issue of certification, as I understand, Your Honor, was raised at oral arguments, where Judge Lovell asked, would it be helpful if I certified this question to the Montana Supreme Court? Boston's counsel, in the record, had indicated we wouldn't think it would be helpful. That was from Mr. Morrison. Now, Mr. Morrison is the former commissioner of insurance for the state of Montana. He and our commissioner, the current commissioner, Lynn Dean, have taken any action against Caring for Montanans with respect to the alleged premium violations. This Court affirmed Judge Lovell in FOSN 1 when saying that the 3322526, the specific discrimination statute, was not violated by CFM. So there could be no violation of 3318206 if there was no violation of the more specific insurance code statute 3322526. I have not looked at the record at all, but are you saying that you're directly disputing appellant's counsel about whether there was a formal request for certification initiated by the appellant before a decision? Respectfully, Your Honor, before the decision was issued, there was a request. It was during oral arguments. Post-oral arguments, a request was made. But during oral arguments, when Judge Lovell asked, would this be helpful, both parties said no. Okay. But then they did follow up with a written request. Yes, Your Honor. And from that standpoint, certification is done when there's disputed issues of state law. We don't have disputed issues of state law in this case. We have the Schupeck case. We have the Ibsen case. We have the Victory case. We have a Federal court in this case applying Schupeck. We have a Federal court looking at the Victory decision. You have a Federal district court case that's pretty much on point, but at least that doesn't carry the weight of if you had had a directly controlling State supreme court decision. Your Honor, I would agree with you. We have a district court who has issued two decisions during this interim on both Ibsen and Victory who has stated, and we have cited that, that there is no private right of action under the UTPA except for the six specific tabs in 242. May I ask? It's a little confusing because there are so many Montana cases on so many aspects of things. But if you go back in time to the 70s to the McCarter case, that does seem to suggest, at least at that time, that there's a private right of action on this nondiscrimination issue. Well, from that standpoint, Your Honor, McCarter was a common law claim, and I think the nail was hit on the head here today. None of the Fossen's claims are based upon common law torts. All of their claims under count three and count four, which the district court dismissed on summary judgment, were based upon specific statutory allegations of breaches. Now, they have changed their theme throughout this. May I just ask you about that? In the McCarter, they do cite the anti-discrimination statute when they're saying that the insurer violated that policy. I would, from a standpoint, in my interpretation of McCarter, Your Honor, it did not hold that the insurance statute provided the basis for an independent cause of action. That was a common law claim. It did cite it, but it did not hold that it supported a basis, a statutory basis for a common law claim. And the same thing, they have cited pass, the Third Circuit decision, in reliance upon that you can have specific statutory allegations to support your private right of action. As we have indicated in our brief, that's both misleading and it's misplaced. There was no doubt that the New Jersey court looked at whether you could bring a common statute Tory claim on that claim. But it was a common law, and it doesn't support the proposition that the statute, similar to Section 3318-206, provides an insurer with a private right of action. Even the National Insurance Commissioners have indicated, you cannot have private right of actions under these statutes. So the only claim here was a contract claim based upon an inferred statutory right that would be incorporated in all insurance contracts but not explicitly incorporated under 3318-206. That's the argument, yes, Your Honor. But at the same time, if they want to go with that argument, then if they incorporate all of those insurance statute codes, the statutes, then they also have to incorporate 526, 3322-526, which the district court and this court have held. CFM didn't violate. The other argument from a standpoint that they would like to ignore is Section 1-1-108 under the Montana Code, which states that there is no common law if the law has been declared by statute. Here the law has been declared by statute. What I have with that is that statute does seem to be pretty directly related to claim administration and resolution rather than premium problems. I would agree with you, Your Honor. 242 does relate to claim and settlement handling. But if the legislature wanted to advance to have any other private right of action in addition to claim. Why would they need to? Why would they need to advance it when there were preceding cases that already acknowledged that private clause of action? Because I think the legislature, Your Honor, took great concern with the Clout decision, and they wanted to fix that. But they were trying to fix a claims adjustment problem. As far as I could tell, they weren't even addressing or concerned with rate discrimination. No, and I, with all due respect to the legislature, Your Honor, the Commissioner of Insurance enforces these statutes. The Commissioner of Insurance is supposed to regulate premiums. It's not the state court. It's not the federal court. It's the Commissioner of Insurance. And Judge Lovell, with all due respect to the Commissioner of Insurance, pointed out in footnote 6 that neither Mr. Morrison nor Commissioner Ledeen took any action with respect to CFM on these premiums. It's the Commissioner's duty. And throughout this process, we have argued that under the uniform. So you're saying that if there's just a rank discrimination on premium and the company says, you know, we don't much like you anymore as an insured, so we're going to triple your rates, that I'm sorry, but there's nothing you can do about that except to complain to the Commissioner of Insurance? Under the statutory scheme, yes, Your Honor, that's correct, because there is no rights for a private citizen to raise this statute as a private state claim. Well, I guess the extension of their argument is that the entire insurance code is adopted within the contract. And if that were true, then, for example, discriminating against somebody based on a genetic condition would also be a private cause of action under their theory, correct? Under their theory, that would be correct, Your Honor. So there would be no part of the insurance code that could not be a private right of action under their contract theory?  But we have to take it to the next step, that if they have 206 incorporated into the insurance contract, they also have to incorporate 3322526, which is the more specific discrimination statute with respect to premiums when you're dealing with insurance rates based upon some type of a health or family situation. But the discrimination here, would that fall under a discrimination based upon prior health or something like that? Currently, no, Your Honor, because at the time, there could have been an allegation that somebody was discriminated because of health reasons. But right now... Let's not talk about the hypotheticals. Let's talk about the reason here for that rate increase. Well, they allege that the rate increase was based upon what we found. There's a bona fide association and a non-bona fide association. Under ERISA, this Court and Judge Lovell found that under ERISA, this plan, this Chamber Choices plan, was not a bona fide association. But under the Small Health Employers Affordability Act, a separate statute dealing with bona fide associations, without the organizational component, CFM would have, or excuse me, the Chamber Choices Association plan, would have been a bona fide association. So there's two separate statutes dealing with two separate issues. But you have different types of rating. And what they complain about is that the Fossen Farms were rated as a unit, and they were not community rated with all other 600 employers in the Chamber Choices plan. They said that they were assured of that when they bought the policy. When they bought the policy, they said, we were assured we would be in a group, rated once, but then not rated again. That's the allegation, Your Honor, with respect to the first year. And they complained, and they did the right thing. They complained to the Montana Insurance Commission. CFM said, fine, if you have a misunderstanding, we're not going to increase your rate the second year, but you will see an increase in the third year. And that's what happened. And after that, this is when this lawsuit was filed. So that's where Judge Lovell talked about they have not been damaged. And from my standpoint, the district judge didn't abuse his discretion on keeping this case in his courtroom. And he certainly applied the correct substantive law with respect to counts three and four. But this whole case can be decided on the damages. You know, that's really there's been very little discussion about that. But to me, that's my biggest concern. The merits, I must say, I'm deeply troubled about the interpretation that's being argued. But I'm not confident that I can see a damages here. And with that, Your Honor, the law in this circuit is Ballou. And after this court, just as in FOSN 1, remanded to the district court, Ballou was decided. And here you have the FOSN 1 panel specifically saying that the FOSNs were seeking relief. And this is a quote from FOSN 1-660-FED-30-1114, that the FOSNs were seeking relief, parent restitution. And that's their parent that was consistent with ERISA's enforcement scheme. But after Ballou, plaintiffs come back and say, we're not seeking restitution. We're seeking discouragement. We're seeking the excess premium. And the district court plainly held and correctly determined that under Ballou, the FOSNs' request for relief under the state law claims, they were saved state law claims under ERISA, do run afoul to ERISA's enforcement scheme. Because there was no identifiable source under Ballou for the plaintiffs to go and attack, to recover from. We don't have that. And Ballou is the law of this circuit. Now, there have been mentions that the U.S. Supreme Court has taken up the Montale case, which is different. It holds different than Ballou that you do not have to have that segregated fund. But the law in this case, and I think the Solicitor General in its brief in the Thurber case to the U.S. Supreme Court, actually said that the Ninth Circuit got Ballou correct, that you have to have that identifiable source, that segregated fund, because now the FOSNs are seeking to attack the general assets of CFM. So in that regard, we can talk about the state right of action, private right of action, and we can talk about whether the district court was correct in not certifying to the Montana Supreme Court. And we can talk about did he abuse his discretion in keeping the case. But when you look at the remedy sought, it runs a foul to risk, which is federal law. And all of that comes together. And you can find on all three counts, all three issues, that the district court got it right. But he certainly got it right on Ballou. The disgorgement theory is just that. It's the surcharge issue, and that was addressed in the Merrick case with the United States Supreme Court. But if there is a surcharge, you have to have a claim of breach of fiduciary duty. And you have to have, quote, the profits. If you look in the amended complaint, there's not one allegation that CFM was a fiduciary. There's not one allegation that they're seeking the profits of CFM. They changed their theory midstream to try to avoid Ballou. And the district court analyzed. Even if you had properly alleged the Small Employers' Health and Affordability Act, even if you did, you're still loose because you have not satisfied Ballou's requirements. You're seeking restitution. That's what you've told me for the last six years. That's what you told the Ninth Circuit. And now to come back and change your theory in midstream without amending the complaint, without showing that CFM, there is no evidence, there is no proof that CFM was a fiduciary. And you cannot have disgorgement without a proof or an allegation of fiduciary. So does that, if we agree with you on that, is that the end of this case? Yes, Your Honor, I believe so. I absolutely do. Thank you. Thank you. You've exceeded your time, but in fairness, I want to give you a minute for rebuttal, so in case you have some things to add, I'm sure you do. A, 3322526, the Little HIPAA Act, the decision in FOSM 1 said that that statute is conflict preempted, but the statute at issue here is analytically distinct and is not. Ballou has nothing to do with this case. Ballou was an issue involving benefits and plans. Benefits and plans are what ERISA deals with. Ballou didn't cite FOSM, and Ballou doesn't deal with premiums and rates. Premiums and rates are issues that, as FOSM 1 said, are specifically relegated to the states. So the fundamental question is, who should be deciding these fundamental state law issues involving premiums and rates? It should be the state of Montana and not a federal court, a court of limited jurisdiction versus a state court, which is a court of general jurisdiction that has developed its own jurisprudence that is designed to protect people such as the FOSNs in this case. With respect to the commissioner, the Montana Supreme Court, on numerous occasions, has said the commissioner does not have plenary power vis-a-vis the insurance code. And persons injured as a result of the violation of the insurance code have claims there under, and I cite Williams, I cite McCarter, I cite Sullivan v. Doe, and numerous other cases that are cited in those cases. Thank you. We appreciate your argument, both counsel, coming from Montana. The case just argued, FOSN v. Caring for Montanans, is submitted.
judges: O'scannlain, Ebel, McKeown